UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA for the use and benefit of HDB CONSTRUCTION, INC. | * * * | CIVIL ACTION NO. |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | |
| | * | |
| FEDCON JOINT VENTURE AND WESTERN SURETY COMPANY | * * | |
| | * | |
| Defendants | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * *

## COMPLAINT

COMES NOW Plaintiff, HDB Construction, Inc., which brings this action in its own name, and according to 40 U.S.C. § 3133, in the name of the United States of America for the use and benefit of HDB Construction, Inc., and for its Complaint against Defendants, FEDCON Joint Venture and Western Surety Company, respectfully avers as follows:

## PARTIES

1.  Plaintiff, HDB Construction, Inc. ("HDB") is, and at all times relevant has been, a corporation duly organized and existing under the laws of the State of Kansas, with its principal office and place of business located at 729 SE Wear Avenue, Topeka, Kansas, 66607.  HDB is engaged in the business of general heavy civil contracting and other construction related activities. At all materials times, HDB was authorized to do business in the State of Louisiana.

2.  Defendant, FEDCON Joint Venture, ("FEDCON"), is a joint venture organized and existing under the laws of the State of Florida, with its principal business office located at 908 S. Volusia Avenue, Unit C., Orange City, Florida 32763 and its mailing address at 201 Indian River Avenue #201, Titusville, Brevard County, Florida 32796.  FEDCON can be served with process

through its Louisiana registered agent for service of process, Incorp Services, Inc., 3867 Plaza Tower Drive, 1st Floor, Baton Rouge, Louisiana 70816.

3.   Defendant, Western Surety Company ("Western Surety"), is a corporation organized and existing under the laws of the State of South Dakota, with its principal business office at 101 South Phillips Avenue, Sioux Falls, South Dakota 57104.  Western Surety is duly authorized to issue contract surety bonds in the United States of America and in the State of Louisiana.  Western Surety can be served with process through its agent for service of process, the Louisiana Secretary of State, 8585 Archives Ave., Baton Rouge, Louisiana 70809.

## JURISDICTION AND VENUE

4.   This Court has jurisdiction over HDB's Miller Act claim pursuant to 40 U.S.C. § 3131, *et seq*. (the "Miller Act").  Accordingly, this Court has original jurisdiction under 28 U.S.C. § 1331. Because HDB's state law claims are so related to HDB's federal Miller Act claim that they form part of the same case and controversy, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).  Pursuant to 28 U.S.C. § 1332, this Court also has diversity jurisdiction over the state law claims as FEDCON's principal place of business is located in Florida and HDB's principal place of business is located in Kansas.

5.   Venue is mandatory in this judicial district pursuant to 40 U.S.C. § 3133(b)(3), which requires the action be brought in the United States District Court in the location where the contract is to be performed and executed regardless of the amount in controversy.  This judicial district is the proper venue for the state law claims pursuant to Article 76.1 of the Louisiana Code of Civil Procedure, which requires an action on any contract be brought in the parish where the contract was executed or where any work was performed.   The work required by the contract at issue was performed in Plaquemine Parish, Louisiana, which is within the jurisdiction of the United States District Court of the Eastern District of Louisiana.

6.   All conditions precedent to bring this lawsuit have been satisfied, have occurred or have been otherwise waived.

## FACTUAL BACKGROUND

7.   On or about October 18, 2013, FEDCON entered into a contract referred to as the "Prime Contract," with the United States of America, acting by and through the United States Army Corps of Engineers ("Owner" or "USACE") New Orleans District, to furnish all labor and material and perform all work for Resilient Features, WBV, HSDRRS, Mississippi River Levee, Oak Point to August, WBV-MRL 2.2, Plaquemines Parish, Louisiana for items 0001 through 0031 of the Bidding Schedule (hereinafter called the "Project"), in accordance with the terms and provisions contained in the contract, for a consideration of $48,372,000.00.  The Prime Contract is identified as Contract No. W912P8-14-C-0002 which required that FEDCON repair and raise substandard levees along a section of the Mississippi River between the cities of Oak Point and Augusta.

8.   The provisions of the Prime Contract between FEDCON and the USACE and in accordance with the Miller Act, the applicable federal law, required FEDCON provide a payment bond for the Project.  On or about October 21, 2013, FEDCON, as principal, and Western Surety, as surety, executed and delivered to the Owner payment Bond No. OMB 9000-0045 ("Miller Act Bond") in which FEDCON and Western Surety bound themselves, jointly and severally, in the sum of $48,372,000.00 for the protection of all persons supplying labor and materials in the prosecution of the work provided for in the Prime Contract.  A copy of the Miller Act Bond is attached as Exhibit "1."

9.   According to La. Rev. Stat. § 9:2780.1(D), the laws of the State of Louisiana shall apply to and govern any construction contract to be performed in this State.

10. On or about December 26, 2013, HDB entered into a subcontract with FEDCON in which HDB agreed to furnish certain labor, materials, equipment and services required for the Project under the Prime Contract at the agreed price of $2,730,456.00 (hereinafter "Subcontract").

11.  The Subcontract also incorporated by reference the Prime Contract between FEDCON and the USACE, as well as its general and supplementary and special conditions, drawings, plans, and specifications, including those mandated by the USACE.

12. Exhibit A to the Subcontract sets forth the scope of the work to be performed by HDB as well as the work to be performed by others including FEDCON, consisting of:

| | | |
|---|---|---|
| a. | Section Number 01 53 00.01 12 | Temporary Flood Protection |
| b. | Section Number 01 57 23.01 12 | Truck Wash-Down Racks |
| c. | Section Number 02 41 00 | Demolition |
| d. | Section Number 31 05 19.04 | Separator Geotextile |
| e. | Section Number 31 11 00.00 12 | Clearing and Grubbing |
| f. | Section Number 31 23 00.00  12 | Excavation |
| g. | Section Number 31 24 00.00 12 | Embankment |
| h. | Section Number 31 15 00.00 12 | Surfacing (Granular) |
| i. | Section Number 35 31 19.03 12 | Riprap |

A true copy of the Subcontract between HDB and FEDCON is attached as Exhibit "2."

13. HDB's scope of work consisted of:

a.  Working two independent work fronts simultaneously;

b.  Furnishing all import soil necessary to complete the work estimated to be two thousand three hundred twenty tons of imported soil;

c.  Performing certain engineering, surveying and layout to complete the work;

d.  Developing a staging area for FEDCON's site office facilities including clearing, grading, aggregate surfacing, maintenance and removal at project completion and four thousand square yard of temporary separator geotextile under the aggregate surfacing and removal at project completion;

e.  Construction, maintenance and removal of two temporary ramps on protected side of levee to traverse road providing construction access to temporary access road;

f.  Construction, maintenance and removal of temporary access road on protected side of levee for use by cranes, concrete truck and other heavy vehicles, approximately 12 feet wide and extending length of level and adjacent to temporary work platform;

4

g.  Construction, maintenance and removal of two temporary work platforms on protected side of levee for use by crane and other heavy vehicles during construction with dimension of 30 feet wide by 600 feet long, located ten feet from centerline of steel sheet pile as well and removing and extending work platforms in segments for the entire length of the levee as the work progressed;

h.  Construction, maintenance and removal of two temporary construction ramps;

i.  Construction, maintenance and removal of vehicular access ramps to the flood side of the levee;

j.  Development of area approximately four acres near site of work for FEDCON's staging, splicing and storage area;

k.  Providing temporary water service to FEDCON's project site office facilities and two truck wash down racks to place compacted stabilization slab subgrade to within one-tenth of foot of final grade;

l.  Backfill and compaction of concrete floodwall after installation (by others) of the stabilization slab, concrete foundations and concrete walls;

m.  Earthwork necessary to place concrete scour protection and concrete slope pavement subgrades to within one-tenth of a foot of the final grade with others to perform, excavation, backfill and compaction of cut-off wall, with HDB to backfill toe trench;

n.  Dust control;

o.  Pressure washing of HDB's and its subcontractors' and suppliers' trucks used for hauling prior to departing construction site;

p.  Restoration of surfaces damaged or disturbed during performance of work with grassing to be provided by others;

q.  River temporary flood protection;

r.  Hurricane temporary flood protection;

s.  Installation, maintenance and removal and disposal of dry limestone path;

t.  Silt Fence, truck wash down racks, erosion and sediment controls (not permanent seeding) components for silt fence barrier, associated maintenance and removal of all storm water pollution prevention measures;

u.  Mechanical street sweeper attachment and skid steer loader dedicated to cleaning Highway 23 with HDB available to clean Highway 23 of any track out or debris falling off any washed truck;

    v. Subgrade preparation of the levee crown and slope for the concrete slope pavement and final dressing of the backfill; and

    w. Excavation and backfill of the toe trench for the concrete slope pavement.

14. HDB fulfilled its obligations as stated in the Subcontract and provided additional labor, materials and equipment in the prosecution of the work under the Prime Contract.

15. Upon information and belief, FEDCON has been paid by USACE for work performed by HDB yet has failed to notify let alone pay HDB for the work it performed.

16. FEDCON is obligated to make payment on HDB's outstanding invoices for work performed and completed within and outside the scope of the Subcontract.

17. During the course of this Project and HDB's prosecution of the work under the Subcontract, FEDCON failed to remit payment to HDB for numerous outstanding invoices and for measured work. FEDCON has refused or stalled payment by requesting superfluous documentation, by providing unjustifiable excuses, making false allegations about the quality, timeliness and completion of HDB's work, and, upon information and belief, misrepresenting facts to HDB regarding received payments from USACE and to USACE regarding completion of work by HDB.

18. The reasonable and agreed value of such labor and materials under the Subcontract is $2,730,456.00, later adjusted through additive and deductive change orders, for a total of $2,960,068.22 leaving a balance due of $236,797.49. See Exhibit "3," Application for Payment. This figure does not include other amounts owed to HDB by FEDCON for work, materials, equipment and manpower and other damages relating to the Project.

19. From commencement of this Project through the demobilization of HDB on this Project, FEDCON knowingly and intentionally neglected and refused to coordinate the Project with HDB, provide Project schedules, provide timely or adequate responses to request for information,

unilaterally altered the requirements of HDB's Subcontract, manufactured and created back-charges that it then assigned to HDB, and refused to compensate HDB for labor and materials incorporated into the Project, all resulting in FEDCON's active interference in HDB's prosecution of the work.

20.  FEDCON also engaged in a practice of preparing HDB's pay application that were not based on measured work and materials incorporated into the Project and supported by HDB's invoices but based on amounts FEDCON arbitrarily elected to pay.  Only the pay applications prepared by FEDCON would be submitted for payment.

21.  Further, FEDCON intentionally and to HDB's detriment provided written directives to HDB to perform tasks on a time and material basis for which FEDCON knowingly and unjustifiably refused to compensate HDB, despite HDB's performance and completion of the work which FEDCON directed it to perform.

22.  During the Project, FEDCON unilaterally and without cause unreasonably and unnecessarily delayed payment to HDB for labor performed and measured quantities of materials already incorporated in the Project.  HDB's labor and materials costs were at or near eight hundred thousand dollars ($800,000.00).  FEDCON was made aware that HDB was forced to draw from its own resources and other resources to pay for the labor and materials and advised FEDCON that it could no longer afford to finance the Project.  Rather than pay HDB timely for those materials in accordance with the Subcontract, FEDCON elected to directly purchase $148,128.13 of limestone materials for HDB's work and then manufactured an improper back charge to HDB for 25% of the costs of the limestone or $37,032.03.

23.  FEDCON, in disregard of the federal requirements, subcontracted with HDB to build a 12-foot-wide access road.  The Prime Contract required that the USACE specifications controlled both the Project and be incorporated into FEDCON's subcontracts.  In recognition of the USACE's

specifications for access roads, HDB constructed a portion of the access road to be in compliance with the federal specifications, *i.e.*, 24-feet-wide. HDB was then instructed by FEDCON to construct the access road 12-feet-wide as called for in the Subcontract. HDB complied with FEDCON's request but thereafter FEDCON again changed the requirements for the access road and instructed HDB to build a 15-foot-wide access road to permit the cranes, heavy trucks and heavy equipment to safely traverse the Project site.

24. Further, pursuant to FEDCON's project schedule, HDB was supposed to demobilize from the Project site no later than February 20, 2015, but for reasons wholly unrelated to HDB and entirely related to FEDCON's knowing actions and omissions, HDB's actual last day of work from the Project was November 28, 2017, which totaled an additional 1,011 days on the Project, 500 days or more that are unaccounted for and for which HDB is entitled to be monetarily compensated.

25. In addition, in contravention of its contractual obligations and USACE specifications, FEDCON intentionally and unilaterally changed the sheet piling materials from the PZ-22 materials specified to a thinner, lighter and less expensive AZ 13-770 sheet piling materials. HDB's work was sequenced so that the successful installation of proper sheet piling materials be completed before it could continue with its work.

26. FEDCON required a subcontractor, whose work was integral to the proper sequencing of HDB's work, to use the inferior sheet piling materials for the Project. Not only was the sheet piling incompatible with the soils in the earthen levee, but also not in accord with the USACE applicable specifications. As a result of FEDCON's intentional use of the lighter sheet piling, FEDCON's pile driving subcontractor was unable to drive the lighter sheet piling. Eventually, FEDCON reversed itself, called for the proper sheet piling and demanded that its pile driving subcontractor remove the lighter non-specified sheet piling from the site. FEDCON's actions

caused a delay in HDB's work that was further delayed by several months until the lighter sheet piling could be removed, the correct sheet piling brought to the site and then properly incorporated into the Project.  Through this Project including during this time, HDB was required to be on site but unable to perform its work until FEDCON could properly perform its work.

27.  HDB was also the subject of FEDCON's intentional exclusion from the Project schedule even though its work was critical to the progress and proper sequencing of the work.  It was only months after the work began on the Project that HDB "collected" a construction schedule created by FEDCON.  Thereafter, HDB was not privy to a Project schedule, was told it was not on the critical path for this Project, and was not provided an updated or revised Project schedule until 2018 AFTER the Project was completed when, on information and belief, FEDCON manufactured a Project schedule, which bore no relation to reality.

28.  FEDCON further disrupted the sequence and performance of HDB's performance of its Subcontract by intentionally stalling the Project while simultaneously requiring HDB to stand-by to perform, while FEDCON engaged in a contractual and safety issue disputes with one of its pile driving subcontractors, resulting in the "termination" of the subcontractor.  The Project was on standstill with HDB having to man the Project and keep its equipment on site during this dispute. Numerous months passed while FEDCON sought another replacement subcontractor.  HDB was not compensated for this down time and is entitled to an equitable adjustment or delay damages from FEDCON.

29.  As a direct result of FEDCON's active interference in HDB's performance of its Subcontract, HDB incurred expenses, overhead, loss of business opportunity, equipment charges, lost manpower and other unforeseeable costs resulting from delays, improper sequencing, hindrances, work stoppages, material alterations and execution of the Project.

30.  Pursuant to the Subcontract, FEDCON is liable to HDB for all delay damages caused by

FEDCON's active interference in the Subcontract work performed by HDB.

31.   FEDCON's failure to pay HDB the due amount $236,797.49 constitutes a breach of the Subcontract.

32.   Further, FEDCON is liable to HDB for all delay damages incurred by HDB, currently calculated to be at least $3,000,000.00 as a result of its active interference in HDB's Subcontract performance on the Project.

33.   Under the Payment Bond, Western Surety bound itself to pay claimants, such as HDB, for all amounts due for materials and labor used in connection with the Project where FEDCON fails to make payment.

34.   The date on which the last labor and material were provided to FEDCON by HDB was November 28, 2017.  More than 90 days have elapsed since the last date of HDB's work on the Project and HDB has not been paid in full for the labor and materials provided for the prosecution of the Prime Contract.

35.   As HDB has complied with all requirements and conditions precedent under the Subcontract and the Miller Act payment bond, and has performed the work with labor, equipment and material for which it seeks payment, HDB is entitled to payment of the amounts sought on the Subcontract from Western Surety.

36.   This lawsuit has been commenced within one year from the date upon which the last of the labor was performed and the material supplied by HDB on the Project.

## CAUSES OF ACTION

38.   Plaintiff alleges and incorporates by reference as though set forth in their entirety, the allegations contained in paragraphs 1 through 36 into each of the following causes of action and paragraphs thereunder.

39.   To the extent the allegations any claim is inconsistent with the allegations contained in any

other claim, such allegations are pled in the alternative.

**I.      Claim on Payment Bond**

40.  Western Surety undertook a direct obligation with the United States of America to act as the surety for the Project.  In accordance with that obligation, Western Surety issued a Miller Act payment bond securing the debts and obligations of FEDCON, the prime contractor, for the Project.

41.  HDB performed all of the work that it was contracted to perform and submitted all invoices for the work that it was contracted to perform on the Project, $236,797.49 of which remains unpaid as of the date of filing this Complaint.

42.  HDB has also incurred delay damages resulting from FEDCON's active interference in its Subcontract in the amount in excess of $3,000,000.00, all of which remains unpaid as of the date of filing this Complaint.

43.  As a result of FEDCON's breach of its payment obligation, HDB has sustained damages for which it now seeks to recover.  Pursuant to their obligations under the Miller Act, 40 U.S.C. § 3131 *et. seq.*, Western Surety, as surety, and FEDCON, as general contractor, are liable to HDB for the unpaid amounts of $236,797.49, or equitable adjustment of contract amounts plus delay damages incurred by HDB on the Project in the amount of $3,000,000.00 under Payment Bond Number OMB 9000-0045.

**II.      Interest**

44.  HDB restates and re-alleges Paragraphs 1 through 36 of its Complaint.

45.  Based on FEDCON's failure to make timely payments to HDB, HDB is also entitled to recover from Western Surety and FEDCON interest as allowed under the federal Prompt Payment Act, 31 U.S.C. § 3901 *et seq*.

### III.    Breach of Contract

46.  HDB restates and re-alleges Paragraphs 1 through 36 of its Complaint.

47.  FEDCON's refusal to pay HDB the amount due and owed on the Project pursuant to the Subcontract and work performed outside the scope of the Subcontract constitutes a breach of contract and renders FEDCON liable for damages under La. Civ. Code art. 1994.

### IV.    Violation of La. Rev. Stat. § 9:2784 against FEDCON

48.  HDB restates and re-alleges Paragraphs 1 through 25 of its Complaint.

49.  Pursuant to La. Rev. Stat. § 9:2784, FEDCON is obligated to pay HDB within fourteen (14) days of receipt of payment from the USACE.  Upon information and belief, FEDCON has unjustifiably withheld payments from HDB and failed to pay HDB for its provision of labor and materials, despite FEDCON's receipt of payment from the USACE.  Pursuant to La. Rev. Stat. § 9:2784, HDB is entitled to recover penalties and its attorney fees from FEDCON.

50. HDB reserves the right to amend this Complaint against FEDCON and Western Surety.

**WHEREFORE,** Plaintiff, HDB Construction, Inc. prays for judgment in favor of HDB Construction, Inc. and against Defendants, FEDCON Joint Venture and Western Surety Company, jointly severally and *in solido* in the amount of $236,797.49, plus $3,000,000.00 in delay damages, equitable adjustment and contract amounts, plus interest, penalties and attorney's fees, costs of this action and for such other further legal and equitable relief as this Court deems appropriate.

Respectfully Submitted,

By:    PUGH, ACCARDO, HAAS,
        RADECKER & CAREY LLC

        */s/Maura Pelleteri*
        MAURA Z. PELLETERI (#8463)
        AMY S. MALISH (#28992)
        CATHERINE SENS NAPOLITANO (#36016)
        1100 Poydras Street, Suite 3300
        New Orleans, Louisiana 70163-1163
        Telephone: (504) 799-4500
        Facsimile: (504) 274-3524
        mpelleteri@pugh-law.com
        amalish@pugh-law.com
        cnapolitano@pugh-law.com

        ATTORNEYS FOR
        HDB CONSTRUCTION, INC.